UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSSETTS

Case No. 1:24-cv-10880

FREDRIK BRODEN,

    Plaintiff,

v.

PRIVATE BUSINESS JETS, LLC,
d/b/a FlyPrivate,

    Defendant.

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS UNDER 28 US.C. § 1927 AND THE COURT'S INHERENT AUTHORITY

### INTRODUCTION

Fly Private brings this motion only after serious and studied consideration. Indeed, the undersigned counsel has never filed a motion under 28 U.S.C. § 1927 or inherent authority against any attorney in more than ten years of practice. Fly Private takes no measure of joy in filing this motion, but Plaintiff's and its counsel's conduct simply cannot be ignored.

"An attorney's duty to represent a client zealously is not a license to harass." Cronin v. Town of Amesbury, 81 F.3d 257, 262 (1st Cir. 1996). Yet that's precisely what has occurred here.

Through his counsel, plaintiff Fredrik Broden sought $30,000 from defendant Fly Private for alleged copyright infringement of an unremarkable stock image with a market value of $10. Fly Private made a pre-suit offer of $200—the top end of the going rate for stock photography, and approximately what Broden's case was worth. Rather than

respond to that offer, CopyCat Legal brought this lawsuit with the goal of abusing the judicial process to vexatiously run-up the cost of defense so that Fly Private would offer more. It worked. It worked because Broden's counsel, Mr. Daniel DeSouza, had this action filed in the District of Delaware, a forum he knew was inconvenient for all concerned, then opposed Fly Private's request to have the case moved to this District, and then, at the moment Mr. DeSouza would be required to defend his choice of venue, entirely abandoned his position without any reasonable explanation. His conduct was a clear vexatious use of the judicial process which resulted in real and unnecessary costs to Fly Private.

This is not an isolated case or lapse of judgment. It is Mr. DeSouza's calculated and intentional effort to unreasonably force defendants to expend money on defending low value and baseless copyright suits (litigated with boilerplate filings) with the goal of increasing what a defendant will offer in settlement. That conduct is quintessential copyright trolling—conduct which Mr. DeSouza embraces—and a wholly improper and wasteful use of the judicial machinery.

The troll playbook which drains judicial resources is well established. E.g., Harrington v. 360 ABQ, LLC, No. 22-cv-00063, 2022 WL 1567094, at *3 (D.N.M. 2022) (trolling exists where the copyright owner employs abusive litigation tactics to extract settlements); see also Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc., 77 F.4th 630 (7th Cir. 2023) ("this suit bears all the hallmarks of a copyright troll at work"); McDermott v. Monday Monday, LLC, 17-cv-9230, 2018 WL 1033240 (S.D.N.Y. Feb. 22, 2018) (counsel's "litigation strategy in this district fits squarely within the definition of a copyright troll" with "an astonishing rate of voluntary dismissals and quick settlements").

Broden, like virtually all of CopyCat Legal's other clients, uses the prospect of a target "incur[ring] a greater cost, in legal expenses" as leverage to extort "a modest license fee for which there is no legal basis." Klinger v. Conan Doyle Est., Ltd., 761 F.3d 789, 792 (7th Cir. 2014). Defendants, like Fly Private, are forced to "choose between the cost of settlement and the costs and risks of litigation" and, given that risk, they understandably "prefer to pay modest or nuisance settlements rather than be tied up in expensive litigation." Design Basics, LLC v. Lexington Homes, Inc., 858 F.3d 1093, 1097 (7th Cir. 2017). CopyCat Legal relies on that commonsense response. Such tactics have been empirically demonstrated, and trolling is, by in large, the majority of copyright suits. Cf. Malibu Media, LLC v. Doe, no. 15-cv-4369, 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015) ("empirical studies show that the field of copyright litigation is increasingly being over-taken by 'copyright trolls'").

Mr. DeSouza gleefully embraces his role "as a troll" lawyer, writing he's "always looking for a few good meaty bones." Decl. of Griffin Klema, Exhibit A-2. Judges, however, have taken a dim view of his conduct. Eclipse Sportswire v. The Sports Mall, LLC, no. 8:22-cv-1433-KKM-NHA (M.D. Fla. Nov. 7, 2024) (finding that Mr. DeSouza "took a factually unreasonable position" on behalf of his client). Order, Affordable Aerial Photography, Inc. v. Ditommaso, No. 22-cv-80030 (S.D. Fla. Nov. 9, 2023) (Middlebrooks, J.) (characterizing Mr. DeSouza's "exclu[sion of] the factual context" as "conduct unbecoming of a forthright litigant in federal court" and that "the omission borders on deceitful").

This Court ought to carefully consider those judge's observations and find Mr. DeSouza's latest conduct unreasonable, vexatious, and harassing, and impose an

appropriate sanction.

## PROCEDURAL HISTORY & FACTS

This case is one of many hundreds of copyright infringement suits that CopyCat Legal has filed (at least 496 in the past three years), Ex. A-3, following directly in the footsteps of now-disbarred copyright lawyer Richard Liebowitz.

On May 4, 2023, Mr. DeSouza sent his firm's boilerplate demand letter to Fly Private due to the presence of a photograph appearing on a social media post. Decl. of Don Smith, Exhibit B-1 (the "Demand Letter"). The Demand Letter made unequivocal that Mr. DeSouza intended to file suit "in the United States District Court for the District of Massachusetts" if his client's demand for $30,000 was not paid within 14 days. Id. at 2.

Included with the Demand Letter was a draft complaint, which identified the District of Massachusetts where suit would be brought. Id. at 4 (case caption); id. at 4, ¶ 2 (alleging Fly Private's place of business is Marshfield, MA); id. at 5, ¶ 4 (alleging personal jurisdiction over Fly Private in Massachusetts); id. at ¶ 5 (alleging venue in the District of Massachusetts).

In response to the Demand Letter, Fly Private immediately removed the years-old posts, and engaged counsel. Decl. of Smith, Ex. B at ¶ 6. After responding and making clear that the Demand Letter was misguided in a number of factual and legal respects, Fly Private offered Broden more than twenty times the fair market value[1] of Broden's image, because his case was an "actual damages only" case: Broden was ineligible to claim statutory damages by operation of 17 U.S.C. § 412. Decl. of Klema, ¶¶ 14-17, Ex. A-4 at 2-3. That also meant he was disentitled to prevailing party attorney's fees, and

---

[1] Average stock photographs are approximately $10. Decl. of Klema, Ex. A at ¶ 15.

could not argue that the infringement was willful. 17 U.S.C. § 412. Mr. DeSouza had actual knowledge his client's case was far lower in value than a statutory damages case, as the Demand Letter itself shows. Decl. of Smith, Ex. B-1 at 2 ("the Copyright Act provides for the recovery actual damages"). Yet in unreasonable, *in terrorem* fashion, he nevertheless asserted that Broden would seek both attorney's fees and statutory damages. Id. at 1 ("attorneys' fees will be sought"); id. at 2 (citing only statutory damages cases).

After Fly Private responded, another associate at the CopyCat Legal firm was assigned to handle the matter, Lauren Hausman. Decl. of Klema at ¶ 19. As is consistent for every case handled by CopyCat Legal, she refused to entertain a non-confidential settlement. Id.; Decl. of Klema, Ex. A-5. Fly Private, however, was unwilling to agree to confidentiality. Decl. of Smith, at ¶ 8; Decl. of Klema, Ex. A-4 at 4.

Rather than provide a counter-demand, CopyCat Legal filed suit on behalf of Broden—not in Massachusetts as indicated by its demand package, but in the District of Delaware. In gross violation of professional norms, CopyCat never stated that it intended to file suit, nor did it provide any contemporaneous notice to Fly Private's counsel, which also violated Florida's ethics rules—rules which govern the professional conduct of Mr. DeSouza and Ms. Hausman as Florida-licensed attorneys. Fla. R. Professional Conduct 4-4.2 ("a copy must be provided to the person's lawyer" if an attorney is authorized by law to serve process directly on a represented party).

After refusing to entertain a settlement without confidentiality in September 2023, CopyCat Legal spent time revising its original draft complaint from its Demand Letter and changed venue from Massachusetts to Delaware. Compare Decl. of Smith, Ex. B-1 with DE 1.

Upon learning of the litigation, Fly Private began efforts to try and have the action transferred from Delaware to Massachusetts. Decl. of Smith, ¶¶ 10-11. Given the deadline for a response and its ongoing efforts to engage local counsel, its existing counsel prepared a motion to dismiss on the basis of *forum non conveniens*, which Fly Private filed *pro se.* DE 7. That filing put Broden on notice that Delaware was an inappropriate forum. The district court struck that filing and ordered Fly Private to retain counsel. DE 8. Fly Private then requested Broden voluntarily transfer the action to Massachusetts. Decl. of Klema, ¶ 23. Mr. DeSouza declined. Id.

With the understanding that Broden would advocate for Delaware as his chosen forum, Fly Private was then forced to engage a third law firm to serve as local counsel in Delaware (in addition to its existing defense counsel and available local counsel in Massachusetts), retaining Lisa Dailey. Decl. of Smith at ¶ 11; Decl. of Lisa Dailey at ¶ 4.

On February 20, 2024, Mr. DeSouza then disclosed evidence that his client's settlement demand was objectively unreasonable. Specifically, Mr. DeSouza provided an invoice of a third party photography agency showing that the cost of the subject image was $400. Decl. of Klema at ¶ 24, Ex. A-6. Despite that, Broden still demanded $10,000, many multiples of what the evidence showed was his potential actual damages of a few hundred dollars. Id.

Because Broden never responded to Fly Private's efforts to explore a reasonable settlement, he again forced Fly Private to proceed with seeking transfer. Decl. of Dailey at ¶¶ 6-7. Attorney O'Kelly advised that he would confer with Mr. DeSouza before he could agree to transfer. Id. at ¶ 8. Consistent with Broden's prior refusals to transfer, no agreement was forthcoming by either Mr. DeSouza or Attorney O'Kelly, thus forcing Fly

Private to prepare a motion, supporting memorandum of law, and related filings. Mot. to Transfer, DE 9, 10.

In direct contrast to his prior refusals to transfer, and on the day before Broden's deadline to respond to Fly Private's motion, Mr. DeSouza then proposed to stipulate to the transfer of the action to Massachusetts. Decl. of Klema at ¶ 26. When confronted with the sudden change of Broden's position, particularly when the complaint was re-drafted from alleging venue in Massachusetts to alleging venue in Delaware, and why, after filing, Mr. DeSouza refused to transfer until *after* Fly Private was forced to expend considerable costs judicial relief, Mr. DeSouza had no specific explanation. He vaguely asserted that "maybe" CopyCat Legal did not have local counsel in Massachusetts. Id.

After that telephone call between counsel, Fly Private then reviewed other cases in the District of Massachusetts, and learned that CopyCat Legal did in fact have local counsel in Massachusetts, Mr. Chip Mueller. Decl. of Klema, ¶ 27. Ex. A-3. Fly Private also learned that relationship with Attorney Mueller long existed before Broden filed the present suit in Delaware, given the 20 cases he has handled as local counsel for CopyCat Legal. Id.

Fly Private then memorialized the earlier conversation with Mr. DeSouza in writing, noted Attorney Mueller's longstanding relationship with CopyCat Legal, and again invited Mr. DeSouza to explain why he filed Broden's case in Delaware rather than Massachusetts, and why he opposed transfer prior to Fly Private being saddled with costs of a formal motion:

> I will give you a final chance to explain why you, on behalf of Broden, brought this lawsuit in the District of Delaware. Again, your demand letter with the draft complaint identified the District of Massachusetts as the venue, you were aware that

> my client was located in Massachusetts, Broden has no real ties to Delaware, you would not agree to transfer the matter to Massachusetts after the suit was brought (and after filing suit in an unprofessional way without any advance notice to me as Fly Private's counsel), and now suddenly when Broden might incur the expense to prepare a response to Fly Private's motion to transfer, he concedes to the relief my client previously sought and which was refused for no reason at all.

Decl. of Klema, ¶ 28. Ex. A-7.

Mr. DeSouza then denied the truth of his firm's relationship with Attorney Mueller, and again refused to justify his choice of venue, evidencing lack of knowledge about a case which he claims he personally reviews: "I don't recall specifically whether local counsel was available in Massachusetts at the time, whether 3rd Circuit law was arguably more favorable, etc. You insinuated that the lawsuit was filed in Delaware as part of a trolling scheme (shocking that you would allege such), I disagreed." Id.

Broden, after forcing Fly Private to incur significant costs in preparing a motion to transfer the action from Delaware to Massachusetts, then stipulated to the relief sought. Joint Stip. DE 13. Consistent with CopyCat Legal's preexisting relationship, Attorney Mueller then appeared on behalf of plaintiff Broden after the action was transferred to this district. DE 17. But by that point, CopyCat Legal had succeeded in forcing Fly Private to incur thousands of dollars in unnecessary costs.

Post-transfer, Mr. DeSouza then moved for admission *pro hac vice*, DE 28, which the Court granted, DE 29.

To protect itself from further abusive litigation by CopyCat Legal, Fly Private made a final offer of $3,000 to Broden pursuant to Rule 68, which he accepted. Notice of Acceptance, DE 33. The Clerk then entered a judgment ending this case on the merits. Final J., DE 36.

This motion for sanctions follows, seeking to address Mr. DeSouza's unprofessional, unethical, harassing, and annoying litigation tactics.

**ARGUMENT**

While the merits of the case have concluded, this Court has continuing jurisdiction to impose sanctions under 28 U.S.C. § 1927 and its inherent authority. Bolivar v. Pocklington, 975 F.2d 28, 31 (1st Cir. 1992) ("a motion for section 1927 sanctions likewise presents a 'collateral issue' appropriate for resolution once the court has addressed the merits") (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393-98 (1990)).

Here, sanctions are appropriate against Broden's counsel for conduct unbecoming of an officer of the court—unreasonable conduct that exceeds zealous representation. Fla. Bar v. Schwarz, 382 So. 3d 600, 611 (Fla. 2024) ("the requirement of providing zealous representation is not a sword to wield as an excuse to otherwise engage in misconduct").

**I. PLAINTIFF'S COUNSEL SHOULD BE SANCTIONED FOR UNREASONABLE AND VEXATIOUS LITIGATION PURSUANT TO 28 U.S.C. § 1927**

**A. Standard for Sanctions under § 1927**

Under Section 1927, a court may impose "attorneys' fees reasonably incurred because of" conduct by an attorney who "multiplies the proceedings … unreasonably and vexatiously." 28 U.S.C. § 1927. It need not inquire into the attorney's belief, but simply consider, *objectively*, whether the attorney's "[b]ehavior … is **harassing or annoying**." Cruz v. Savage, 896 F.2d 626, 631 (1st Cir. 1990) (emphasis supplied). If it is, then that conduct violates § 1927. Id. at 632. The standard is "a more relaxed, objective [one] that does not require conscious impropriety." Id. at 631. "It is enough that an attorney acts in

disregard of whether his conduct constitutes harassment or vexation." Id. at 632. On the other hand, negligence, inadvertence, or incompetence will not support sanctions under § 1927. Id.; see also United States v. Wallace, 964 F.2d 1214, 1219-20 (D.C. Cir. 1992) (distinguishing recklessness from ordinary negligence for purposes of sanctions under § 1927) (citing Cruz, 896 F.2d at 632). Sanctionable misconduct can include "obfuscation of the issues, hyperbolism and groundless presumptions." Cruz, 896 F.2d at 634. Though not required, bad faith is also "a 'telltale' indication of sanctionable conduct." Viscito v. Nat'l Planning Corp., no. 18-cv-30132, 2020 WL 4274721 (D. Mass. July 24, 2020) (quoting Jensen v. Phillips Screw Co., 546 F.3d 59, 64 (1st Cir. 2008)).

The purpose of § 1927 is to redress "conduct [that] causes the other part[y] to incur expenses or fees that [it] otherwise would not have incurred." Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 247 (1st Cir. 2010) (quoting H.R.Rep. No. 96-1234, at 8 (1980) (Conf.Rep.), reprinted in 1980 U.S.C.C.A.N. 2781, 2782). "[T]he statute's purpose is both to 'deter frivolous litigation and abusive practices by attorneys *and* to ensure that those who create unnecessary costs also bear them.'" Id. (quoting Riddle & Assocs., P.C. v. Kelly, 414 F.3d 832, 835 (7th Cir. 2005)).

Disingenuous legal arguments and being "unwilling to engage in meaningful discussions with opposing counsel, as is necessary to resolve litigation efficiently and expeditiously" can also justify sanctions under § 1927. Xiao Wei Catering Linkage in Inner Mongolia Co. Ltd. v. Inner Mongolia Xiao Wei Yang USA, Inc., no. 15-cv-10114, 2018 WL 1567604, at *6 (D. Mass. Mar. 30, 2018); see also Irwin Indus. Tool Co. v. Bibow Indus., Inc., No. 11-cv-30023-DPW, 2014 WL 1323744 (D. Mass. Mar. 31, 2014). Thus, even legally permissible conduct can nevertheless be sanctionable. Cf. Holgate v. Baldwin, 425

F.3d 671, 677 (9th Cir. 2005) ("'the mere existence of one non-frivolous claim' in a complaint does not immunize [counsel] from Rule 11 sanctions"); In re Perry, 918 F.2d 931, 934 (Fed. Cir. 1990) ("The 'empty head and pure heart' defense will not excuse objectively unreasonable conduct.");

Finally, while "repeated infractions" are not a necessary condition for sanctions, Northwest Bypass Group v. U.S. Army Corps of Engineers, 569 F.3d 4, 6 (1st Cir. 2009), other cases in which the attorney has conducted himself improperly can be relevant to the analysis. Xiao Wei Catering, 2018 WL 1567604, at *6 (D. Mass. Mar. 30, 2018) (considering other cases illustrating a "history of misconduct" including "misrepresentations to the court" which "demonstrate[d] a striking pattern of engaging in abusive litigation tactics").

### B. Plaintiff's Counsel's Violated 28 U.S.C. § 1927 by Intentionally Filing in an Inconvenient Forum, Refusing to Transfer, and Forcing Fly Private to Incur Thousands of Dollars in Unnecessary Costs

Here, Mr. DeSouza harassed Fly Private, ostensibly on behalf of his client, without justification. He did so by knowingly filing in a forum that was not convenient for any party, refusing to move the action, forcing Fly Private to incur thousands of dollars in attorney's fees, and only after that point, at the moment he would have to justify his choice of venue, then agreed to transfer. None of that was appropriate.

First, Mr. DeSouza sent a letter to Fly Private knowing that it operated in Massachusetts. Decl. of Smith, Ex B-1 at 1. The draft pleading enclosed with his letter also bore his signature. Id. at 3. After Fly Private did not immediately agree to Broden's excessive demand, Mr. DeSouza had the pleading revised extensively to change venue from Massachusetts—a district in which he knew Fly Private operated and where venue

would lie—to an inconvenient district where no witnesses were located, where no records were located, and where none of the parties' attorneys were located. Decl. of Smith, ¶ 10.

Then, by initiating the action without contemporaneous notice to Fly Private's counsel, Mr. DeSouza violated Florida's ethics rules. Decl. of Klema, ¶ 20; Fla. R. Professional Conduct 4-4.2 ("a copy must be provided to the person's lawyer" if an attorney is authorized by law to serve process directly on a represented party). He chose to have the lawsuit served directly on a party he knew was represented by counsel. Fly Private's principals were understandably upset at learning of a lawsuit—not from the lawyer they engaged to defend their business, but from a process server. Decl. of Smith, ¶ 9.

Most importantly, when asked to voluntarily move the action from Delaware to Massachusetts, Mr. DeSouza refused. Decl. of Klema, ¶ 23. Besides the direct request of counsel, Mr. DeSouza was also put on notice of the legal basis for doing so. Mot. to dismiss, DE 7 (articulating a *forum non conveniens* argument).

As a result of Mr. DeSouza's choice in having Broden's lawsuit filed in Delaware, and refusing to transfer, Fly Private was then forced to engage a local Delaware licensed attorney, in addition to its existing defense counsel. Decl. of Smith, ¶ 11; Decl. of Dailey, ¶ 4. After Fly Private retained Delaware counsel, Mr. DeSouza's agreement to transfer was still not forthcoming. Decl. of Klema, ¶ 25; Decl. of Dailey, ¶¶ 6-8. As a result of his continued refusals to transfer the case, Fly Private then spent thousands of dollars in attorney's fees to prepare and file a motion to transfer and supporting memorandum of law and other documents required under the Delaware local rules. DE 9, 10.

In transparently abusive and unreasonable fashion, at the moment Mr. DeSouza

would have had to defend his choice of venue, he conceded. The day before the deadline for Broden's response, Mr. DeSouza then agreed to transfer the case. Decl. of Klema, ¶ 26. Even upon the belated agreement, he still refused to justify his venue decision. Id. at ¶¶ 26-28.

Despite Fly Private's repeated efforts before incurring thousands of dollars in unnecessary costs, Mr. DeSouza was "unwilling to engage in meaningful discussions with [Fly Private's] counsel, as [wa]s necessary to resolve [the] litigation efficiently and expeditiously." Xiao Wei Catering, 2018 WL 1567604; Irwin Indus. Tool, 2014 WL 1323744. His intentional about-face caused Fly Private to unreasonably incur thousands of dollars in needless costs—costs which copyright trolling tactics seek to inflict on opponents that do not accede to excessive settlement demands. McDermott, 2018 WL 1033240 (a copyright troll seeks "quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim"). Mr. DeSouza viewed Fly Private as the "meaty bones," Decl. of Klema, Ex. A-2, which he could force to "incur a greater cost, in legal expenses" when Fly Private was not willing to pay more than a "modest license fee" pre-suit, even where there may have been "no legal basis" for Broden's claim, Klinger, 761 F.3d at 792.

Mr. DeSouza's decision to file his client's action in Delaware showed a "serious and studied disregard for the orderly process of justice," Cruz, 896 F.2d at 633, because he never intended to litigate the action in Delaware, but merely filed there knowing that Fly Private would seek to have it moved to Massachusetts, and thereby incur significant costs. His decision not only multiplied the proceedings, 28 U.S.C. § 1927, it was "a vexatious time consuming exercise which bore no fruit." Cruz, 896 F.2d at 633. It was

conduct which caused Fly Private to "to incur expenses or fees that [it] otherwise would not have incurred." Lamboy-Ortiz, 630 F.3d at 247.

Even if he did not intentionally file suit in a known inconvenient forum, the reasons Mr. DeSouza gave to Fly Private's counsel for not transferring were also disingenuous. He asserted that his firm didn't have local counsel in this district as the justification for why he chose to file his client's suit in Delaware. Decl. of Klema, ¶ 26. That placation was false. Id. ¶ 27. CopyCat Legal has had a longstanding relationship with Attorney Mueller, as evidenced by Attorney Hausman's admission in a case in which he is local counsel in this district. Mot., Prepared Food Photos, Inc. v. WeNeedAVacation.com, LLC, no. 1:23-cv-11085 (D. Mass. Nov. 6, 2023) (seeking admission *pro hac vice*). Mr. DeSouza is also the principal of CopyCat Legal PLLC. See Fla. Dep't of State, Doc. No. L19000151169.[2] He had actual knowledge of his associate's (Attorney Hausman's) involvement in that case, where Mr. DeSouza swore under oath that every complaint for any of CopyCat Legal's clients is his ultimate decision, as the firm's managing attorney, stating that it is "always" his "policy" where if he "is not the lead attorney on the file, [then] the Complaint is again reviewed by [him] prior to filing." See Decl. of DeSouza, ¶ 4, Harrington v. Island Villa Rental Props., Inc., no. (S.D. Fla. Feb. 19, 2024). There is no doubt that Mr. DeSouza personally decided or otherwise authorized the instant suit to be filed in a forum in which neither Fly Private nor Broden had any contacts and which was intentionally different from

---

[2] The Court may take judicial notice of official government records, like the Florida Department of State, Division of Corporations. Available at https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquiryType=DocumentNumber&aggregateId=flal-l19000151169-a4315e24-f6b8-462b-894b-5b303447b13d&directionType=Initial&searchNameOrder=COPYCATLEGAL%20L190001511690&searchTerm=L19000151169

one where he asserted the suit would be filed, causing Fly Private to incur unnecessary costs. Lamboy-Ortiz, 630 F.3d at 247. And when provided multiple opportunities to explain why he did so, he was both untruthful and unprofessional. Decl. of Klema, Ex. A-7 at 2. But where "a busy attorney makes misleading representations to a court out of expedience and selfish disdain for the sound administration of justice, sanctions may be necessary to deter similar misconduct by that attorney and by similarly-situated attorneys." Rankin v. City of Niagara Falls, 293 F.R.D. 375, 382 (W.D.N.Y. 2013), aff'd sub nom. Rankin v. City of Niagara Falls, Dep't of Pub. Works, 569 Fed. App'x 25 (2d Cir. 2014).

Mr. DeSouza's hyperbole and obfuscation with *ad hominem* attacks of counsel, Decl. of Klema, Ex. A-7 at 2 ("your never-ending quest to annoy every district and Circuit Court judge" and "see if you can act like a normal human being"), is not only inappropriate, but sanctionable. Cruz, 896 F.2d at 634. Those statements are consistent with his rhetoric elsewhere, and not isolated. See, e.g., Def.'s Response, Eclipse Sportswire v. The Sports Mall, LLC, no. 8:22-cv-1433-KKM-NHA (M.D. Fla. Nov. 22, 2024) ("sharp rhetoric" and "irrelevant *ad hominem* attacks at Defendant … and its counsel"); Def.'s Reply, Sadowski v. The Biltmore Hotel LP, no. 1:24-cv-23583 (S.D. Fla. Oct. 28, 2024) ("casting strikable aspersions on the skills of the Biltmore's counsel and mis-stating law"); Def.'s Reply, Harrington v. Island Villa Rental Props., Inc., no. 4:23-cv-10080 (S.D. Fla. Feb. 29, 2024) ("Besides further knowingly false statements, plaintiff's counsel continues his *ad hominem* attack unabated."); Def.'s Reply Affordable Aerial Photography, Inc. v. Home Junction, Inc., no. 2:22-cv-14296 (S.D. Fla. Jan. 17, 2023) ("*ad hominem* attacks on the undersigned reflect an attempt to distract from [his] own ethical violations").

Besides advocates, judges too have commented on Mr. DeSouza's improprieties, finding that he "took a factually unreasonable position" on behalf of his client. Report and Recommendation, Eclipse Sportswire v. The Sports Mall, LLC, no. 8:22-cv-1433-KKM-NHA (M.D. Fla. Nov. 7, 2024). More alarmingly, Mr. DeSouza was accused of conduct "border[ing] on deceitful," where it was "possible, that [he] knew" of certain omitted facts "while pursuing default judgment" and characterizing Mr. DeSouza's "exclu[sion of] the factual context" as "conduct unbecoming of a forthright litigant in federal court". Order, Affordable Aerial Photography, Inc. v. Ditommaso, No. 22-cv-80030 (S.D. Fla. Nov. 9, 2023) (Middlebrooks, J.). A court may take judicial notice of other courts' rulings and the counsel's past misconduct. Gollomp v. Spitzer, 568 F.3d 355, 374 (2d Cir. 2009). In pursuing hundreds of copyright cases, Mr. DeSouza has displayed a "pattern of engaging in abusive litigation tactics" as well as possibly a "history of misconduct." Xiao Wei Catering, 2018 WL 1567604, at *6 (D. Mass. Mar. 30, 2018).

### C. Plaintiff's Counsel Should Be Sanctioned the Costs Which Fly Private Incurred in Transferring the Action from Delaware to Massachusetts

The amount of a sanction is not limited to the minimum level necessary to deter repeated or similar conduct, unlike Rule 11. See Lamboy-Ortiz, 630 F.3d at 247. However, when a court imposes sanctions, it "must determine which fees were incurred because of, and solely because of, the misconduct at issue. . . ." Goodyear Tire & Rubber Co. v. Haeger 137 S.Ct. 1178, 1184 (2017).

Where the costs are those incurred in opposing a motion, courts in the District of Massachusetts have imposed costs similar to what Fly Private incurred here. Northwest Bypass Grp. v. U.S. Army Corps of Engineers, 569 F.3d 4, 6 (1st Cir. 2009) (affirming sanctions of $5,072.50); Irwin Indus. Tool, 2014 WL 1323744 (D. Mass. Mar. 31, 2014)

(awarding $5,000 in sanctions under § 1927).

As a direct consequence of Mr. DeSouza's conduct, Fly Private was forced to prepare a motion to transfer venue, which came at considerable cost to it. Decl. of Klema, ¶¶ 30, 32-35 ($4,995); Decl. of Dailey, ¶¶ 12-14 ($3,510). That expense was the calculated objective of Mr. DeSouza's tactics—tactics which he repeatedly refused to explain. Because Fly Private implored him to explain the basis for filing Delaware, and he repeatedly refused, he should not be heard now to provide such a *post-hoc* justification in the face of a motion for sanctions. This Court would not abuse its discretion in sanctioning Mr. DeSouza for the costs Fly Private incurred in preparing a motion to transfer that Broden first opposed and then later abandoned its opposition. It would also not abuse its discretion in additionally imposing the costs of bringing the instant motion.

## II. PLAINTIFF'S COUNSEL SHOULD BE SANCTIONED FOR ABUSIVE LITIGATION PRACTICES PURSUANT TO THE COURT'S INHERENT POWER

### A. Standard for inherent power sanctions

In addition to 28 U.S.C. § 1927, a district court may award attorney's fees as a sanction pursuant to its inherent powers. Galanis v. Szulik, 841 F. Supp. 2d 456, 460 (D. Mass. 2011). If sanctions might not come within the scope of § 1927, a district court may invoke its inherent power to award attorney's fees and costs against parties or attorneys who "act in bad faith, vexatiously, wantonly, **or** for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991) (emphasis supplied); see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 275 (1975) ("attorneys' fees have been assessed" pursuant to inherent authority "for bad faith **or** oppressive litigation practices") (emphasis supplied). Merely because conduct that could have been sanctioned under the

rules of procedure does not forbid a court from imposing sanctions under its inherent power. Chambers, 501 U.S. at 50 (a federal court is not "forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules").

Inherent authority sanctions exist to "to protect the administration of justice by levying sanctions in response to abusive litigation practices." Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 11 (1st Cir. 1985) (quoting Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d 371, 386 (2d Cir. 1981)).

"[A] court's array of supervisory powers includes the power to assess attorneys' fees against other parties or their attorneys in befitting situations." United States v. Horn, 29 F.3d 754, 760 (1st Cir. 1994). Sanctions may be imposed against the attorney pursuant to the court's inherent power to "vindicate[e] judicial authority" so as to make an opponent "whole for expenses caused by [the attorney's] obstinacy." Chambers, 501 U.S. at 46. Advocacy that simply "burden[s] an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto." Lipsig v. Nat'l Student Mktg. Corp., 663 F.2d 178, 181 (D.C. Cir. 1980).

If the court exercises its inherent power to sanction an attorney, it must describe conduct with "sufficient specificity, accompanied by a detailed explanation" of the reasons justifying the issuance and the amount of the award. F.A.C., Inc. v. Cooperativa De Seguros De Vida De Puerto Rico, 563 F.3d 1, 6 (1st Cir. 2009). However, "[b]ecause of its potency, a court's inherent power to shift attorneys' fees 'should be used sparingly and reserved for egregious circumstances." Id. (quotation marks omitted). Nevertheless, merely violating a "civility order" can support a sanction under inherent powers. See

United States v. Kouri-Perez, 187 F.3d 1, 7 n.3 (1st Cir. 1999) ("conclud[ing] that the sanction" of $4,000 "was within [the district court's] inherent powers" but dismissing the appeal for lack of jurisdiction).

Because sanctions are "within the heartland of the district court's realm," the appellate court "review[s] a district court's imposition of them only for manifest abuse of discretion." Jones v. Winnepesaukee Realty, 990 F.2d 1, 5 (1st Cir. 1993) (affirming sanction of $5,000 under Rule 16(f) for failing to attend three hearings). "[A] party protesting an order in respect to sanctions bears a formidable burden in attempting to convince the court of appeals that the lower court erred." United States v. One 1987 BMW 325, 985 F.2d 655, 657 (1st Cir. 1993).

### B. Plaintiff's Counsel's Conduct Should be Sanctioned under the Court's inherent power

The facts of this case present a "befitting situation" in which to exercise the Court's inherent authority to sanction Broden's counsel. The "lack of explanation for the sudden" reversal of Broden's position combined with multiple "opportunit[ies] to explain and justify" that change in position, together with the resulting costs Mr. DeSouza caused Fly Private to incur supports an appropriately-tailored sanction. Brockton Sav. Bank, 771 F.2d at 12. The conduct is also consistent with copyright trolling's goals of "extorting a settlement" from a defendant by employing litigation tactics with "an improper purpose." Galanis, 841 F. Supp. 2d at 462. Mr. DeSouza "had the option" to avoid the costs that Fly Private incurred in seeking the appropriate venue, "but [he] went forward nevertheless" with his refusal until after he "forc[ed Fly Private] to expend time and money" pursuing transfer. Id. at 462-63.

Finally, Mr. DeSouza's unprofessional and improper conduct is further evidenced by his baseless threat of a Rule 11 motion against Fly Private's counsel if it filed this motion. Decl. of Klema, ¶ 29. When asked what facts or law supported the threat, Mr. DeSouza had none. Threats of Rule 11 sanctions as a "tactic of intimidation and harassment" can be sanctionable where it is "invoked for an improper purpose." <u>Gaiardo v. Ethyl Corp.</u>, 835 F.2d 479, 485 (3d Cir. 1987). That is precisely what Mr. DeSouza did—threatening a Rule 11 motion without any colorable basis in fact or law.

## CONCLUSION

Daniel DeSouza and his firm have approached copyright litigation not with the seriousness that federal litigation commands, but rather with a view towards abuse and obfuscation of the truth. That illustrates the intentional disregard of his obligations of fairness towards opposing counsel, candor to the tribunal, and objectively harassing conduct. Sanctions are appropriate.

<u>/s/ Griffin Klema</u>
Griffin C. Klema, Esq.
Fla. Bar No. 100279
Griffin@KlemaLaw.com
**Klema Law, P.L.**
PO Box 172381
Tampa, FL 33672
420 W. Kennedy Boulevard
Tampa, FL 33606
Telephone: 202-713-5292
*Attorney for Defendant*